All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning everyone. The panel has before it a total of six cases. Three of them are being submitted today on the brief only without oral argument. They are Appeal No. 06-5092 Precision Standard v. United States, Appeal No. 07-3043 Placide v. Department of Transportation, and Appeal No. 07-5030 Polk v. United States. And the three case argument list will hear first Appeal No. 06-7352 Rios v. Department of Veteran Affairs. Mr. Chisholm, good morning. Welcome. Please proceed. Good morning, Your Honor. This is Robert Chisholm for the appellant, Rafael Rios. The CAVC continues to create impediments to its jurisdiction. In Mr. Rios' case, the court below misinterpreted the provisions of 38 U.S.C. 7266, and there are three separate avenues for Mr. Rios to demonstrate that his notice of appeal was timely. Before you get into the statutory argument, can you remind me what the evidence was as to possible equitable tolling regarding diligence? As I recall, there was an affidavit from the assistance group in Puerto Rico and some assertions attributable to Mr. Rios himself. I'm trying to get a picture of what else, if anything else, of an evidentiary nature was there that was submitted to the Veterans Court that would be relevant to diligence or like issues with respect to possible equitable tolling. Well, the first notice of appeal that never arrived at the court was actually sent on November 6, 2003, and it was a follow-up inquiry on a letter dated February 25th. No, I understand the basic chronology, but what I'm asking you about is what is the actual evidence given to the Veterans Court that would establish throughout the months in issue diligence on the part of your client? His second letter was the diligence in following up with what is the status of my case. Well, why shouldn't he have followed up two months earlier? Because he presumed that it had been mailed and that it had arrived at the court and he wanted to know its status. Now, the way a normal course of appeal goes, you might not hear anything from the court initially. It may be a while before the secretary transmits the board decision. Sometimes it takes 14 to 30 days before that actually happens. So there's nothing for him to have received in that time window between when he files the notice of appeal and he assumes the court received it, and then he makes his follow-up inquiry some 20 days after the 120-day period had actually run. Well, what does an appellant first receive from the court? They will receive a notice of docketing. And when does that normally get sent out to the appellant? That should usually get sent out to the appellant sometime within a week or so, depending on the court's docketing procedures. So then if Mr. Rios or counsel had been aware of that, they should have been a little suspicious that a month went by and no docketing statement shows up. Wouldn't you agree with that? That would be true, except he may have assumed the docketing statement once the Veterans Service Organization had actually helped him and assisted him in filing the notice of appeal. Were they going to represent him with respect to the appeal in the succeeding stages of the appeal? No, Your Honor. They didn't do that. Well, then why would he expect them to be handling everything henceforth? Your Honor, he shouldn't have expected that. But he did make a follow-up attempt. We know that he did. The only question is, is the diligence implied in his follow-up letter a little bit undercut by the long elapsed time between when he should have gotten the docketing statement and when he did send that letter, because it was several months. It was several months. But is it your view that he was nevertheless sufficiently diligent that he qualifies for and should have had the benefit of equitable tolling of the two-week delay or two-and-a-half weeks, whatever it was? That's true, Your Honor, because he did follow the procedure set out by 7266 and he mailed a notice of appeal, and the evidence demonstrates that, I think, through the sworn testimony of the VSO representative. Well, I thought the board folded him on the ground that he didn't establish that he had it correctly addressed, and if it had been misaddressed, then that would have been chargeable to him rather than to the U.S. Postal Service losing the item. When you say the who, you mean the court? The court. I don't think the court made that finding. There's a statement in there that suggests that, but I don't think that's an actual finding, the fact that the court below made in its decision. I think what the court below said is it could have been this or it could have been that, but they didn't actually make that finding a fact. And that's one of the problems with the case. They refused to apply equitable tolling and make the necessary jurisdictional facts for equitable tolling. But apart from the equitable tolling issue, is there something else? Did Mr. Rios submit an affidavit? Mr. Rios submitted statements. I don't think any of them are sworn statements. No, they're not affidavits, Your Honor. But the lady at the Veterans Assistance Organization in Puerto Rico did submit affidavits? She did submit a sworn statement. And any other sworn statements besides hers? No, I believe hers was the only actual sworn statement. All right, well, I've taken up a lot of your time, but I wanted to just get a better picture of the evidentiary record that might be relevant to the equitable tolling ruling by the Veterans Court. You should return to the points you were seeking to make. The first rule is the mailbox rule, which creates a presumption of delivery. It doesn't help you if the post office lost it, right? Well, there's a presumption of delivery. Yeah, but if there were a fire in the post office and mail were destroyed, that rule wouldn't help you, right? It depends if it had actually been posted before the fire, Your Honor. And in this case, we showed that it was actually... Well, I think the Charleston Realty case shows that if he puts it in an envelope, he seals it, stamps it, addresses it, and mails it, then that's sufficient. Well, no, I don't think that's what the Charleston Realty case says. I think what those cases say is it creates a presumption of delivery. But if, in fact, there was a fire in the post office and the mail was destroyed, that presumption would be rebutted, right? It could be rebutted, that's correct. Absolutely. So what does the record show about whether the mailbox, as I understand it, protects you from the fact that the recipient or the alleged recipient of the letter might have lost or might not be willing to acknowledge receipt? What does the record show about whether there have been instances in which the Court of Appeals for Veterans Claims has lost mail or misplaced it? Does the record show anything about that? In this particular instance, there's no evidence that has been garnered on those facts, no, Your Honor. No, I don't mean as to this particular notice. I mean as a general matter. As a general matter, I'm only aware of one case where the court apparently lost a notice of appeal. And that one, you know, is the Evans decision. It's talked about in that case. I'm not aware of any other situations where the court has lost mail. Now, in your case, he ostensibly, allegedly, sent a copy of his appeal notice to the Veterans Department General Counsel Office. That's correct. Now, do we know whether they received it? The court says we didn't receive it, but did the General Counsel's Office also say we didn't receive our copy, or did they agree they did receive it, or what? My understanding is that they did not receive it either. But, you did meet the requirements of the common law mailbox rule by, according to the affidavit of the DSO, put it in an envelope, sealed it, stamped it, addressed it, and mailed it. So I think, under the rule in Charleston Realty, there's a presumption created. Yeah, but the question is whether the presumption can be rebutted. For example, if they were showing that the Court of Appeals for Veteransmen was very careful about the mail and never had been instances where they ever lost anything, and they double-check everything, that might be sufficient to rebut the presumption, right? It could be, except on this record, there's no evidence that's been taken of it. And the court refused to apply the mailbox rule as a predicate and do any fact-finding for jurisdictional purposes. And that's really what the purpose of the appeal here is, to order them to either make jurisdictional facts regarding Edward Blatone, or make jurisdictional fact-finding regarding the common law mailbox rule. And in both instances, the court refused to do that. What would be the mechanism? It almost seems like you would need a mini-trial with perhaps a single judge or a special master or someone like that acting as a fact-finder in the face of incomplete and confusing and perhaps contradictory evidence. And that's entirely possible. But what procedure is actually available? Are you saying you should have had a live evidentiary hearing and it was denied you, or what? No, I'm saying they never gave him the benefit of either equitable tolling or the common law mailbox rule to even get to the question that you're asking me, what way would he prove the facts necessary to establish jurisdiction? Well, they discussed equitable tolling, and then they said his showing was deficient. But is his showing deficient when he uses the 7266 and shows that he actually mailed it within the time frame, it got lost in the mail, it never arrived there, and then he makes a diligent effort by making a follow-up effort. The other thing on equitable tolling is… …that the exception deemed receipt would only apply if there was a clear postmark that showed pre-deadline mailing. Don't we have to deduce from that that the Congress accepted the idea that receipt in the mail is what counted, and that therefore the act of putting it into the postal channels as per the common law rule is precluded? I don't think so, because I think what Congress intended in amending 7266 was to broaden the rule to allow more appeals from people filing across the country, as this is a national court. Yeah, yeah, no question they were trying to create an escape hatch for more veterans than the veterans court law allowed, but I'm asking you a different question. It seems to me that Congress, we would say colloquially, bought into the notion that actual receipt was needed, and it created one narrow exception, which it called deemed receipt, which doesn't apply in this case because this piece of mail never arrived. And it seems to me that the common law so-called mailbox rule, in circumstances other than the postmark circumstance added by C&D, is precluded by necessary implication by C&D. Well, I don't think it is by implication, Your Honor. It certainly isn't explicit that the… Oh, I agree with that. And if they wanted to expand the appellant's ability to file a notice of appeal to the CABC, then the common law mailbox rule, something they didn't foresee, is what happens when the mail doesn't actually arrive and is deposited in the post office. And that is not specifically discussed in the legislative history. But the problem, that's not the right argument, because the common law mailbox rule is not designed to deal with a situation in which the mail is not delivered. It's designed to deal with a situation in which the mail is delivered, and it's talking about a presumption of delivery. So it seems to me that the common law mailbox rule is saying this is how you prove delivery with the presumption, right, actual delivery. It's not dealing with a situation in which the mail is lost by the post office or it's never delivered. I respectfully disagree. I believe it actually deals with a situation where the mail is lost as well as with a situation where it's delivered, albeit date, stamp, plate. Well, I think that hurts your argument. All right, counsel, do you want to reserve the rest of your rebuttal time? Thank you very much. Mr. Hughes, good morning to you. Welcome. Before you begin, I suggest that you button your coat. It's a small thing, but the courtroom, it's not the first time it's been mentioned, actually. There are more important things. Please proceed. May it please the Court, the Veterans Court properly dismiss the appeal as untimely and as disputed. Did you agree that before the amendment adding C and D, that under Charlson and there are other cases that the common law mailbox rule would apply to this provision? I think it's a close question, Your Honor. Why? Well, because Congress – let me say that. Congress gave the Court of Appeals for Veterans Claims broad authority to adopt rules, and it adopted a very strict receipt-only rule. But that's not inconsistent with the common law mailbox rule. The common law mailbox rule, it deals with actual receipt. It creates a presumption of actual receipt. It's not designed to deal with lost mail. Correct, Your Honor. We certainly don't disagree with that. So why – how can you argue that the common law mailbox rule wouldn't apply to this statute before the amendment? I think it would be a very hard argument. I think if you had a situation like you had in Charlson at the Veterans Court before the new statute, that if you did have proof that it somehow was delivered by the presumption within the time period, somehow the Veterans Court had mis-stamped it or not stamped it on time as delivered, the common law mailbox rule could apply. Okay, so the question then before us is whether the common law mailbox rule has been abrogated by the postmark amendments, right? Yes, and I think it clearly has because the common law mailbox rule can't coexist with the statute here. Why? Because if the common law mailbox rule applied, then you wouldn't need an actual postmark to show the date it was received. You could just use a presumption of regular mailing. How would you know when it was mailed? If there's no postmark, how would you know when it was mailed? Well, I think that's exactly the point, Your Honor. Congress decided that it was going to base the slight relaxation of the strict actual receipt rule on one very narrow exception, which was the Court of Appeals. But your central contention in answer to Judge Dyke's question is the common law mailbox rule and the statute as amended can't exist side by side. They're inconsistent with one another. That was your central contention. And Judge Dyke asked, well, how is that so? And I didn't understand your answer to be at all responsive to his question. Because the statutory rule is stricter than the common law mailbox rule. And Congress should have been presumed to, assuming that it applies, should have been presumed to know that the common law mailbox rule applied. And when it enacted a stricter statute requiring an examination of the actual postmark, it implicitly ruled out the more generous common law mailbox rule. Well, it seems to me they're dealing with different things. The postmark rule is dealing with mail that's delivered late or people who live a long way away and it takes a long time for the mail to get there. And they're saying, okay, when the Court of Appeals for Veterans Claims receives it, if there's a postmark on there before the due date, we're going to count it. The common law mailbox rule is dealing with a different problem. And that is where the court says we never received the mail, but in fact it was mailed in a timely way, that is, in enough time to get there. And this is a way of proving that there was actual receipt. It's dealing with quite a different problem than the postmark rule, isn't it? I don't think so, Your Honor. I don't read Charlson in the other cases cited as filling in for actual receipt. The court in Charlson clearly received it. It just stamped its receipt date the day after the due date. And the court used the common law mailbox rule to conclude that the court must have received it within the time period. And I think that's true of most of the other cases, if not all the other cases cited concerning the common law mailbox rule. But the postmark rule is saying we don't care when it was actually received because we'll go with the postmark. But the common law mailbox rule says we're going to create a presumption of actual receipt within the time period. So in other ways, it's dealing with a different problem. No? I don't think so because it's still determining when the court received the filing. Under the postmark rule, it's deemed received as of the date of the postmark. Under the common law mailbox rule, it's deemed received within the ordinary course of business from the date of mailing. But unlike the tax statute, this statute continues to say that actual delivery counts. And all the mailbox rule is doing is saying we're going to create a presumption of actual delivery if it was timely mailed in sufficient time to get there. But it still requires a receipt of a notice of appeal. No, it doesn't require a receipt. It's evidentiary. The question is, was it received? Was it delivered? And the common law mailbox will allow somebody to create a presumption, rely on a presumption, that in fact it was received in a timely way. Well, I think we just disagree with that view of the common law mailbox rule and what Congress did here. When Congress started before 7266, there was an actual receipt required. And the court had dismissed appeals received after the due date but mailed before the due date. But they didn't eliminate actual receipt. Actual receipt still counts, right? Well, the actual receipt still counts. And Mr. Rios loses because there is no actual receipt here. But that's what the common law mailbox rule is designed to deal with. It's a way of proving actual receipt. Well, I respectfully disagree, Your Honor. It's a way of proving that the actual receipt occurred within the time for appeal or the time for the petition. That's what was a question in Charleston. The question wasn't actual receipt. The question was the date of receipt. Yeah, but there are half a dozen cases in our predecessor court and in the Supreme Court. And you look at those cases, and they're talking about this is a way to prove that the thing was received. The original Supreme Court case, the name of which I've forgotten, was dealing with exactly that situation. Somebody said, I didn't receive the letter. And the Supreme Court said, well, you can prove the actual receipt by relying on the presumption. So long as a statute says actual receipt counts, I don't understand why you can't rely on the presumption to show actual receipt. Well, because Congress enacted a statute. I can only give you the answer I have, Your Honor, which is that Congress knew the Veterans Court required actual physical receipt. And common law mailbox rule, even though it implies receipt, doesn't require actual physical receipt. I understand. I think you're talking about the Rosengarten case. I may have the name slightly wrong. The old Supreme Court case where that's a much different situation to you, Your Honor. That's a situation where there are parties where one party is just refusing to perhaps acknowledge receipt. And so they use the common law mailbox rule as well as some other evidence in that case where the party had essentially written a letter responding to something that they said they didn't receive to show actual receipt. That's not the case at all with the notice of appeal to an appellate court. There's certainly no question. Well, are you now contending that the common law mailbox rule can't apply to a court filing? No. I think that Congress has set forth the manner in which the Veterans Court… No, no, no. I'm not asking about what the Congress did in the statute originally or by amendment. I'm asking whether the common law mailbox rule in its full breadth is set out in all of the case law, in your view, is somehow inapplicable if the party denying receipt is not a private party but is a court of appeals clerk's office. Well, no, of course not, Your Honor, because that's exactly what they did in Charleston. It was a court of appeals, this court's predecessor. But I'm suggesting that the rationale in that old Supreme Court case is a little bit different from the rationale here. But it is a Supreme Court. I mean, don't we have to follow them? I mean, you know, they've told us that there's a presumption of a common law mailbox rule that it's a way of proving actual delivery. Yes, and also they've also said that when a statute invades the common law rule, the statute should override. Only if the statute is coterminous. And I… And I don't understand you to have an answer to that. Well, the answer is if that's accepted, then you don't have to have a postmark to show the date it was filed. And that was the only exception that Congress chose to make in the actual receipt requirement, the strict actual receipt requirement applied by the Veterans Court and approved by this court. But it wasn't designed – the statute wasn't designed to benefit the government. The statute was designed to liberalize the rules for the veteran. It was designed to liberalize the rules to the extent the statute dictated. Well, it looked to me like it was designed to overrule one specific case from the Veterans Court, nothing less, nothing more. So I don't see how the addition of C&D can be argued to have been intended by Congress to obliterate the entire common law mailbox rule. They weren't trying to overrule common law. They were trying to overrule one decision of one court, the Veterans Court, period. Well, I would disagree with that very narrow view of what they were trying to do. It wasn't just one decision. There were more decisions. They cited more. This court had approved the Veterans Court's use of the actual receipt requirement. All right. All right. A line of Veterans Court cases. As well as this court's cases. Under the statute, if the veteran said, I hand-carried it, personally hand-carried it to the Veterans Court and delivered it to them, and there's no record of receipt, can he rely on that as satisfying the delivery requirement of the statute? I think the Veterans Court would have to have actual receipt. No, but if the guy says, I did give it to them, I handed it to the court. They don't have it. They don't have it. So the veteran loses. Yes. Yes, Your Honor. The veteran loses. So if the clerk… That is never going to happen, because the clerk's office, if he takes it in there, is going to hand him back a stamped, filed copy. I did it myself. I didn't hand-carry it. You're refusing to accept the hypothetical. You're saying the veteran loses. He said he has 12 witnesses. I handed it to the clerk. I think that's probably… Before the date. I'll concede that hypothetical, Your Honor. I think that's an obviously much different case from this one. Well, I don't understand why it's different. He's relying on the common law mailbox rule to create a presumption that that's exactly what happened, that it was physically delivered to the Veterans Court. Well, then he's relying on the common law mailbox rule to do something that he didn't argue, which is that it was actual delivery under the first prong rather than actual delivery under the mailing rule, which is specific to the postmark rule. I don't think that the court – that certainly was precluded by what the Veterans Court's previous decisions held because it required actual receipt within its office before it would accept it, and that's what Congress liberalized. So I don't think that argument is at all consistent with the legislative history or the past precedent. Mr. Hughes, you seem to be equating actual physical receipt by delivery by the veteran or by the postman with the recordkeeping in the clerk's office. It's perfectly possible that there can be actual physical delivery by the veteran or his friend or the postman but not a docketing record created by the clerk's office. It's a very hard argument for me to accept that we have to presume conclusively that a government agency never makes a mistake, never loses a piece of paper. Well, I'm not arguing that at all, Your Honor. I certainly wouldn't. And indeed, there are cases where – the Evans case cited in opposing counsel's brief is a case where the notice of appeal was lost, but they found that there was sufficient evidence of the actual postmark to find a timely notice of appeal. In that case, it was because there was a certified mail envelope. A certified mail envelope has a card attached to it which goes with the notice of appeal. That's postmarked and then returned. That falls under the postmark rule. But making a postmark conclusive doesn't necessarily bar somebody from getting the benefit of a presumption, not conclusive, a presumption that comes out of the common law. The two things are not the same. One is conclusive. The other just gets you to first base. Well, it all depends on your starting premise, Your Honor. If your starting premise is that actual delivery in the clerk's office was required, which we believe is the premise that Congress started with when it enacted 7266. No, I'm conceding for this argument that actual delivery is required. Then we have to decide did actual delivery happen. The clerk's office records suggest no, they have no record of it. Now we have the veteran Dyke says, I hand carried it there myself on April 2nd and handed it to the clerk with the red hair. So do we get the presumption then applying to his testimony or is it conclusive that the clerk's office records don't show actual receipt and therefore we have to deem that as conclusive? I don't think you need a presumption there, Your Honor. What you need is evidence showing that there was actual delivery, which could be evidence from him. Or from the common law mailbox rule, which is what it's designed to deal with. I think, Your Honor, if the premise is that Congress did not overrule the common law mailbox rule. They never discussed it. It's never mentioned anywhere in any report or any legislative history or any statement of any congressman or senator, is it? No, it's not. Then you're asking us to read in from absolute silence an intention to overrule an ancient established common law doctrine. That's a tall order. I see that I'm on my time. Can I respond just briefly? You must. I don't think I'm going to have a very good response, Your Honor, but I think that what Congress did was enact a statute that addressed the same subject and set the terms for when a timely filing would be considered, received. If the court doesn't agree with that premise, then yes, the common law mailbox rule may still apply. It's the same argument that the circuits are having about the tax court cases, and we certainly agree with those circuits that have found that the statutory tax rule overrides the common law mailbox rule. Now before you go anywhere, I want to ask you about equitable tolling. It looks like the Veterans Court required something labeled extraordinary circumstances to be proven by the veteran in order to qualify for equitable tolling. I had thought that the equitable tolling was much less demanding, the law of equitable tolling. I had thought that if a filer showed diligence that that was sufficient. And here there is an appearance of a certain amount of diligence in that the veteran filed within a few weeks. He's got four months to file his appeal from the adverse board decision, and he purported to file, attempted to file within several weeks. And then he followed up a few months later with an inquiry because he was concerned that he hadn't heard anything. Now, of course, you can say, well, that's not quite diligence. That's only half diligence. But putting aside how we gauge it, what is the right yardstick for measuring it? Does he have to prove some extraordinary circumstance like he was kidnapped or there was a war that shut down the court for X months like the Civil War cases showed? Or is it enough for him to show personal diligence absent warlike circumstances? I think the law on this is very unclear, Your Honor, to be completely candid with the court. The due diligence requirement comes in large part from Irwin, which identified two specific means of showing equitable tolling, either making a defective filing in the wrong place or in some other way defective or inducement by government agents. In combination with either of those clauses, due diligence is necessary. The Supreme Court and this court have since then recognized that those aren't the only two circumstances in which equitable tolling can be applied. But in recognizing that, they also went beyond saying just due diligence is required and have said that extraordinary circumstances are required. I think the Pace case from the Supreme Court cited in our brief is one of those. I think the examples given, as I recall them in the Veterans Court opinion, were very extreme examples. Civil War, the courts shut for ages because there was a war raging. Somebody else was taken prisoner or in custody or something, obviously handicapped from complying with the filing requirement. But I thought that where we had other kinds of circumstances that tolling has been allowed. I thought we've allowed tolling in Veterans cases where something was filed on time but on the wrong form or in the wrong office. Now, if we've allowed a misfiling to qualify as a timely filing, why shouldn't we allow a mailing to the correct office, the actual clerk's office of the Veterans Court, to qualify for equitable tolling? Well, because first of all, I think that the misfiling is a different group of classes altogether. First of all, it's specifically identified in Irwin that if you exercise due diligence in trying to file a… I'm not asking whether Irwin compels this result. I'm asking whether common sense and logic doesn't suggest this result. If filing in the wrong place is okay, why isn't filing in the right place on time by mailing it within a few weeks of the adverse decision all the more so entitled to tolling? Because the courts have recognized that equitable tolling is a very narrow exception to the requirements of timely filing. That's not helpful. Narrow, moderate, broad, super narrow, minuscule, those kind of adjectives don't help us. It doesn't tell us when can you do it and when can you not do it. Because the courts have not specified every single instance. The extraordinary circumstances test that the Veterans Court used and that we cited in our brief is one drawn from other circuits and from the Supreme Court in the Pace case. And the Supreme Court thinks it's appropriate to require extraordinary circumstances to justify the narrow exception of equitable tolling. It depends what you mean by narrow. It depends what you mean by extraordinary. If you require that there be a war and the courthouse be closed, that's an awfully high burden. If extraordinary means the postal people lost it, then that's a very different definition of extraordinary. Why shouldn't the definition include when a postal clerk lost it, dropped it out of a truck, and it fell in a gutter and washed away in the rain? Well, first of all, I don't think that's necessarily the circumstances here, but assuming it is. We don't know. That's precisely the point. Assuming it is, lost mail is certainly not an extraordinary circumstance. It happens every day. Well, if there are a billion letters transmitted every day and a thousand of them are lost, that's a very low percentage of the total. So if I mail something to a court with proper postage and a proper address and I actually hand it to a postal official in my local post office, shouldn't I be entitled to assume that it's going to get there within a week or so? But it is going to get there. It's not going to get lost altogether. I think you might be entitled to it. On the facts of this case, that should have meant that he should have followed it up within a couple of weeks and not occurring. Why a couple of weeks? Does the notice from the Veterans Board say, look, if you don't like our decision, you have to file a notice of appeal. You have to file it with this court in Washington called the Veterans Court. Here's their address. File it with them, 120 days. Does it then go on to say, if you haven't heard back in 30 days from them, something is wrong, you better call them? It doesn't, Your Honor. It doesn't? It doesn't. So how is a veteran supposed to know that within 30 days he's on notice something is wrong? If he's not told that he'll hear back a confirmation, a docketing statement or whatever it is, if he's not told that, how is he supposed to know when so much time has gone by that he should be on warning that his filing never got there? Well, first I would think you would have the common sense to know that if you don't hear a response to your notice of appeal, something may be wrong. The question is by when. Of course if a year goes by and he's never heard anything, anybody at that point would have to be on warning that something's probably wrong. But we're not talking about a year. We're talking about a couple months. So then the question is, on what basis would he be on notice after a couple months that something is seriously wrong? Well, I think certainly before the time for appeal expires. Why? Why? Why before the – what does that have to do with the expectation of the filer that the deadline is 120 days? These are all facts for the veterans court. If this court is going to adopt a rule that proof of mailing constitutes sufficient filing, then it has overwritten 7266. Well, no, no, no, no. That's not the common law mailbox rule if that's what you're referring to. I'm not referring to the common law mailbox rule. I'm referring to the notion that if the court is going to allow the doctrine of equitable tolling to be used to show proof of timely filing by evidence of mailing before the appeal period, then this court will have overwritten the statutory command in 7266. And I don't think that that's consistent. I don't think that's the suggestion. I think the suggestion is that if it's delivered to a postal official in plenty of time to get there within the filing deadline and if for some reason it's not marked as received, then it's going to be treated as timely filing. That's different from saying that any delivery to the post office is self-sufficient. It's got to be delivery to the post office in time to get there. Well, I was addressing Judge Michel's question about equitable tolling. That's a different question about whether the common law mailbox rule can take the place and presume delivery. But I don't understand why the equitable tolling principle also wouldn't require that you give it to the post office in time to get there. That's not inconsistent with the notion of equitable tolling. It's not inconsistent with it, but Congress didn't decide that evidence of mailing is proof that it got there in time. If Congress wanted to apply that very liberalized rule when it enacted 7266, it could have. We're talking about two different things. I'm talking about the second letter, which was two weeks outside the filing period. And I'm asking whether equitable tolling shouldn't apply to the second letter, which they did receive, but two weeks or three weeks later than the deadline. So I'm asking why that two- or three-week period shouldn't be deemed tolled. And your answer is, well, he should have known sooner to send that letter. And I didn't understand that you had any real basis for that because there's no notice to him of when it is he should expect to hear back from the Veterans Court after his filing has been submitted. Well, first of all, that's a fact question for the Veterans Court to make, and I don't think it's reviewable by this court. I understand the court's precedent regarding that it's a question of law when the disputes – the facts are undisputed. First of all, I don't think the facts are undisputed here. Second of all, whether that constitutes an extraordinary circumstance sufficient to apply equitable tolling is an inherently fact-based judgment. It's not like Jacques Way and those other cases where there's an objective means of determining whether a certain situation happened. Well, all you're saying now is that this panel, even if it finds an error, shouldn't ultimately resolve the question of the mailbox rule or the equitable tolling because there are factual dimensions to it. That simply means we should remand rather than affirm, which is what you're asking for. We're not suggesting that we have an appellate trial here to sort out all these minute little facts, so of course there's fact-finding involved in equitable tolling and also to an extent in the mailbox rule, and of course we shouldn't do that here. But that would just mean we would remand rather than affirm, but you want us to affirm. Well, on the equitable tolling, the court has already done its fact-finding and determined that equitable tolling is not warranted. I don't think the court has any further ability to review that at this court. On the common law mailbox rule, yes. Well, we certainly have the ability to review it if it used the wrong legal test. If you disagree that extraordinary circumstances is the correct test, then yes, Your Honor, but the Supreme Court has used that test, and I think that's binding on this court. Well, of course it's binding on this court, but the question is whether it was reasonably applied here. No, Your Honor, I disagree with that contention vigorously. The question is whether it's reasonably applied as an application of law that is beyond this court's jurisdiction. How often does this come up? I mean, the problem that we have here are people mailing things in plenty of time to get there, but either the mail is lost or the court didn't stamp it properly. How many times a year does this come up? I don't have any numbers on that, Your Honor. It's not in the briefs. It's not in the evidence of the record before the court. This is the first case I've seen. Like this, you're going to hear another case next month that's similar, however. What about the General Counsel's Office copy? Do you agree that the General Counsel did receive, back in the fall, its copy of the Notice of Appeal? No, Your Honor, there's no evidence in the record that the General Counsel's Office received its copy. Did you check? Yeah, we confer, and there's nothing to add to the record. That is, there's no record of receipt by that office of its copy of the Notice of Appeal? I know nothing more than what I've conferred with and what's in the evidence before the Veterans Court, and that is, the General Counsel's Office is not aware of having received this. All right, thank you. Mr. Chisholm, you have a couple minutes of rebuttal. Just one point, Your Honor, and that is, in Matthew, this Court specifically stated the suggestion that equitable tolling is limited to a small and closed set of fact patterns, and that equitable tolling is precluded if a veteran's case does not fall within those patterns, and specifically rejected. So I think the question about— No, Mr. Hughes agreed with you on that. He said that the precedents don't have to cover, factually, a future tolling circumstance. So I guess my point is that the extraordinary test—circumstances test that the CAVC applied was the incorrect test. What we're asking for, Your Honor, is for this Court to remand the case back to the CAVC for two purposes. One, to apply the common law mailbox rule and make the necessary jurisdictional factually determinations, and the same for equitable tolling. If there's no other questions. I have one question that's not related to merit. Sure. This Collins case has apparently been scheduled next month. That's correct. Why didn't either you or—in both cases come from the same decision of the Court of Appeals for Veterans' Claims? How come there wasn't any motion to consolidate the two cases? I believe what happened, Your Honor, is once I filed my notice of appeal in Rios, I informed the counsel that was at record at the CAVC that I was intending to do that, and did they want to join me, and the counsel that I represented passed away. Subsequently, another attorney got involved, and I contacted that attorney through both email and telephone calls. I did not get a good response. I know that Mr. Hockey as well contacted that attorney, and we had difficulty communicating. Thank you both very much. We'll take the appeal under advisement.